[Civ. No. S. C. 31. Second Appellate District, Division One.—February 3, 1937.]

A. L. MILLER, Appellant, v. LEON SACCARES, Respondent.

Marshall & Farnham for Appellant.

Pepin & Hemperly for Respondent.

SHINN, J., *pro tem.*—Plaintiff, a builder, and defendant, a jeweler, residing at Long Beach, decided to engage in a mining enterprise. Their capital was small, but greater than their knowledge and their experience in such matters. Plaintiff procured an option to purchase eleven lode mining locations in Arizona for the sum of $1500. Plaintiff, defendant and one E. Kadletz, the seller, visited certain claims from which defendant took a sample of what appeared to be ore. He thereupon paid $600 on the purchase price and, with plaintiff as co-maker, gave a note for the sum of $900, payable at the rate of $225 per month, and took a deed to the property to himself, and, apparently in exchange therefor, a later deed to himself and plaintiff as grantees. Having acquired the property, the parties decided that they should reduce their agreement to writing. They disagreed in the choice of a lawyer, each preferring one of his own selection, and they compromised the matter by choosing a notary public instead, who, with their assistance, drafted an agreement which set forth, after a fashion, their respective interests in the venture. Having acquired the claims they then decided to seek the advice of a mining man concerning their value and their development, and, with such an adviser, they made another trip to Arizona. Upon this occasion they took to the property a Mr. Bradley of Ajo, a miner who had done assessment work on the claims, and by him they were informed that the property which they had inspected on their first trip (with the

exception of two claims) was not the property which they had purchased. This matter they appear to have treated lightly. Their mining adviser went into a surface working, which was thought to expose an ore body on one of the claims and came forth with a pailful of ore, which was all there was in sight. They learned from him, in the expressive parlance of miners, that the small quantity of ore which lay in a pocket had "pinched out". Upon their return home defendant expressed some feeling of discouragement at the outlook, but at plaintiff's request another trip was made to the property with their mining friend and samples were taken from a shaft some seventy feet in depth. These, unfortunately, when assayed, showed values considerably below the cost of extraction and treatment. In the meantime defendant had paid the note of $900 and had purchased and taken title to some miscellaneous mining equipment upon which he paid $2,000, plaintiff failing and refusing to pay any part of these sums. By this time the parties had learned that the cost of equipment for the commencement of operations on the property would amount to approximately $6,000, which was more money than they had, and they learned also, that as far as could be foretold, the property could be operated only at a loss.

Defendant declined to place his equipment on the property or to pay any further expense. He could not see the use of taking out the first carload of ore at a heavy loss even if a carload was to be had, which was doubtful. Plaintiff then brought this action for dissolution of partnership, claiming a one-half interest in the mining locations and the equipment as well. The court found that the mining claims and the equipment were the sole property of defendant and gave judgment accordingly, from which plaintiff appeals.

The written agreement between the parties read as follows: "The said Parties hereto have agreed to become, and by these presents do become Co-Partners in the working of the following Mining Claims: Sundown Nos. 4, 5, 7, 10, 11, 12, Wonder, Madoc, Liberty Bond No. 1, Liberty Bond No. 2, and Millsight containing approximately three hundred and forty (340) acres and all situated in the Meyers Mining District, Pima County, State of Arizona. In consideration of the Party of the First Part obtaining Option on the above described Mining Claims, Party of the Second Part agrees to

secure title to said Claims, and further agrees to furnish sufficient money and equipment to work said Mining Claims, until the first carload of Ore is shipped from the Mine, after which time the expense, gains and increase from the business shall be divided between them, share and share alike. Should either partner desire to sell his one-half interest in the above claims, it is agreed that the other partner shall have the first option to purchase same. This agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto. This agreement shall be in full force and effect until mutually dissolved.''

The trial judge interpreted the agreement as placing the ownership of the claims in defendant. From the provisions of the agreement that there should be a partnership in the ''working'' of the claims and that after the first carload of ore should have been shipped ''the expense, gains and increase'' should be divided between the parties, share and share alike, the court concluded that plaintiff was to have at most a share of the profits if, as and when the mine should be worked. This construction finds support in the testimony of defendant for, as he testified, he first obtained a deed to himself as grantee; but, upon the promise and upon the condition that plaintiff would pay one-half of the purchase price of the property, defendant consented to have plaintiff's name ''on the deed'', with the understanding that unless and until plaintiff paid his share he was to have no interest in the claims. Such payment was never made. Defendant's act of joining in the execution of the note for $900 lends further support to this construction of the agreement. The finding was that plaintiff should have a one-half interest in the profits when the claim should be worked but no interest in the claims themselves or the equipment. The parties could, of course, as the court with good reason found that they did, make a lawful contract, so defining their respective interests.

The agreement was silent as to the ownership of the equipment and the notary public testified that when the agreement was drafted the parties requested the omission of all reference to the equipment to be purchased, stating that that would be the property of defendant. Plaintiff's claims to an interest in the equipment would seem to be wholly without merit.

The court found that plaintiff paid nothing for the option and that defendant paid all of the expenses of the venture. ■ The claims were found to be worth not to exceed $1500, but while they seem to have been worth that much to E. Kadletz, a finding that they were valueless would have found abundant support in the evidence.

Under the one-sided construction of the agreement contended for by plaintiff, defendant would have been required to sell the property, including the equipment, and after paying outstanding debts, if any, pay over to plaintiff one-half of the remaining balance, without reimbursing himself for his advances, a most inequitable result. By the decree defendant was left in a position where he might retain the property he had paid for with his own funds or such salvage as a sale thereof might afford. The most that plaintiff could reasonably have laid claim to, had he established a partnership interest in the property, would have been a share of the proceeds remaining after defendant had been reimbursed for his advances, and this apparently would have been *nil*. In the determination of the ownership of the mining claims and the equipment, the decree is eminently just and in accordance with the evidence.

■ Defendant had a counterclaim based upon fraud and breach of contract and the assertion that he did not get the claims which were pointed out to him; wherefore he sought $5,000 as damages. The court awarded him $200 for expenses of traveling to Arizona. The fraud alleged consisted of alluring statements made by plaintiff concerning the value of the mining claims, to the effect that the ore lay close to the surface, could be mined at small cost and at a profit, and that the claims were very valuable. There was no allegation and no finding of any representation as to the quantity of ore in sight or which was indicated by the development, nor as to the value of the minerals in the ore or the cost of extraction and reduction. Such generalities, indulged in by one confessedly inexperienced, if not wholly ignorant in such matters, made not with the purpose of disposing of the property at a profit to himself, but in the deluded hope of acquiring for himself an interest in something of supposed value, do not bear the earmarks of actionable deceit. The case seems to be one of the "blind leading the blind" rather than a case of fraud. The fact that the court found that the mining

claims purchased were not those exhibited to defendant does not change our views as to the nature of the transaction. It was not established by competent evidence and was only indicated to be a fact by the remark of Mr. Bradley that some of the claims described in the deed were other than some of the claims the parties had looked at. If a mistake was made plaintiff was not shown to have been responsible for it nor less deceived than was the defendant. It is altogether probable that it was E. Kadletz who did the pointing out. Furthermore, the claims described in the deed might easily have been of more value than the ones inspected; at least no attempt was made to show the contrary. But if there was any damage at all for which plaintiff might have been held responsible, it must have arisen out of the expenses of defendant in making the first trip to Arizona, for after he had looked over the ground and taken his samples he appears to have acted upon such judgment as he possessed in the matter, and upon the independent advice of his friends. There was no evidence as to the cost of the first trip nor, in fact, as to the cost of any of the trips. The award of damages, therefore, was unwarranted because the finding of fraud was not sustained by the allegations of the counterclaim or the evidence, and the damages were not proven.

The judgment is modified by striking therefrom the award to defendant of damages in the sum of $200, and as thus modified is affirmed, each party to bear his own costs of appeal. The appeal from the order denying a new trial is dismissed.

York, Acting P. J., and Doran, J., concurred.